Reading Co., Appellant, *v.* Pennsylvania Public Utility Commission.

Argued September 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*Allen Lesley*, with him *H. Merle Mulloy*, for appellant.

*William A. Goichman*, Assistant Counsel, with him *Thomas M. Kerrigan*, Counsel, for Pennsylvania Public Utility Commission, appellee.

*Frederic G. Weir*, with him *Oliver, Brandon & Shearer*, for intervening appellees.

OPINION BY HIRT, J., December 9, 1958:

Reading Company, for many years, has maintained two railroad yards in the City of Reading in the vicinity of its depot known as the Main or Outer Sta-

tion. The tracks of one of them, the Walnut-Oley Yard, extend for about ½ mile along the main line of the Reading Railroad from Walnut Street northwardly for a distance of five blocks to Oley Street. The other, the Fifth Street Yard, runs in an arc from Walnut Street in a northwesterly direction to Fifth Street a distance of about 1/3 mile. The capacity of these yards respectively is 326 and 151 cars. Employes of Reading Company, in performing their duties in both of these yards must of necessity stand and walk between cars on adjacent tracks in checking car numbers; to couple or uncouple cars; to "bleed air" from the brake systems or couple air hose, and to perform other necessary switching operations involving the movement of cars. The complaint in this case (by the present intervening appellees) charges Reading Company with the failure to correct dangerous conditions in the two yards. Specifically their complaint is: "In these yards, The Reading Company maintains and operates over tracks which are located so close together that numerous close and hazardous clearances jeopardize the life and limb of the individual complainants and many members of the labor unions represented by the complainant committee."

In limine, it is alleged that the Legislative Committee of Railroad Brotherhoods is not a proper party complainant in this proceeding. The committee, an unincorporated association (and therefore not a legal entity, *Grant v. Carpenters' Dist. Council,* 322 Pa. 62, 185 A. 273) on joining in the complaint acted in a purely representative capacity and it is argued that it is not a proper party (on the principle of *Commuters' Committee v. Pa. P. U. C.,* 170 Pa. Superior Ct. 596, 599, 88 A. 2d 420) because, as an association, it did not have a direct, immediate and substantial interest in the subject matter of the complaint. We need

not decide the issue so raised, however, for the reason that the question was rendered moot by the fact that Billman and Johnson, each of whom joined in the action, for himself and on behalf of other members of his union, certainly were proper parties complainant in the proceeding; and they are properly before us as intervening appellees in this appeal.

The main burden of Reading Company's argument, here, is that the Pennsylvania Public Utility Commission does not have jurisdiction to grant relief to employes of a public utility whose personal safety is jeopardized by the conditions under which they work. With this contention we are unable to agree. Section 401 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1171, provides: "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and *safety* of its patrons, *employes,* and the public . . ." The powers granted to the commission under the above Act, including §401, were intended to be broad, in order that the legislative intent in the enactment may be given effect. *Latrobe Bus Service v. Pa. P. U. C.,* 175 Pa. Superior Ct. 164, 103 A. 2d 442. If further authority be deemed necessary to support this liberal rule of construction, it may be found in §902 of the Act (66 PS §1342) which provides: "In addition to any powers hereinbefore expressly enumerated in this act, the commission shall have full power and authority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders, or otherwise, all and singular the provisions of this act, *and the full intent thereof;* . . ." (Emphasis ours).

A contention similar to that urged by Reading Company in this case was raised in *West Penn Rwys. Co. v. Pa. P. U. C.*, 142 Pa. Superior Ct. 140, 15 A. 2d 539. It was there answered by RHODES, J. (p. 151) in this language: "The public, whose safety is to be promoted in such a case, is not only that portion of the public which the utilities serve, but the general public which may come in contact with the facilities of the utilities." The "safe and reasonable facilities" which a utility is bound to supply under §401, supra, clearly included adequate clearances between cars on parallel tracks, for the physical safety of employes whose duties took them there. And in our view it is of no moment that the complainants sought relief under §§413-419 of the Act, without specific reference to §401, supra. Section 413 (66 PS §1183) provides: "Whenever the commission . . . finds that the service or facilities of any public utility are unreasonable, unsafe, . . . or otherwise in violation of this act, the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public, and shall fix the same by its order or regulation." Providing for the safety of employes, in our view, is within the purview of §413. But even if it were necessary to invoke §401 for relief in this case, we in the absence of formal action by complainants, may consider the complaint amended to accomplish that result in the light of the proofs in this proceeding. Cf. *Nock v. Coca Cola Bot. Wks., Pgh.*, 102 Pa. Superior Ct. 515, 520, 156 A. 537; *Cohen v. Marian*, 171 Pa. Superior Ct. 431, 90 A. 2d 373. Statutes need

not be specifically pleaded but the complaint must set forth sufficient facts to bring the case within the statute. *Sheffit v. Koff,* 175 Pa. Superior Ct. 37, 39, 100 A. 2d 393.

There is no dispute as to the physical facts. In the Fifth Street Yard there are 9 tracks with a capacity of 151 railroad cars. There are 12 tracks with a 326 car capacity in the Walnut-Oley Yard. In the Fifth Street Yard the distance center to center between any two adjacent tracks varies between 11.85 feet and 12.27 feet. In the Oley Street Yard the variation in distances similarly measured is between 11 feet 1 inch and 12 feet ½ inch; these measurements were made on the ground at 100 foot intervals. The spaces between adjacent tracks on curves were appreciably less.

The evidence is that throughout recent years many, other than special purpose, freight cars are much wider than the standard cars of the era when these yards were laid out, with the result that even with adjacent tracks 16 feet center to center, the clearance between cars on the tracks is very close. Cars of all sizes and from all railroads may be found in these yards. The testimony is that cars 10 feet 8 inches, and wider, are common on railroads generally, today. And two cars 10 feet 8 inches wide, on adjacent tracks 12 feet apart, center to center, leave a clearance space between them within which trainmen must work, of only 16 inches. Trainmen must move about a great deal in railroad yards, both on the ground and upon railroad cars. And there is evidence in this case, in the testimony of two brakemen, of the many tasks that must be performed in these yards by trainmen and the attendant dangers because of the narrow clearances. There can be no question, in our view, that the complainants and the other employes represented by them, are entitled to relief. And the jurisdiction of the commission to grant

relief is not limited by any of the regulations adopted by it on August 9, 1954 as to permissible or mandatory clearances.

The commission after adequate hearings ordered: "1. That Reading Company, at its sole cost and expense, remove one or more tracks from both its Fifth Street Yard and its Walnut-Oley Street Yard and rearrange the remaining tracks in each yard to provide sufficient lateral track clearances between the tracks at all points so that employes will not be unnecessarily endangered while performing their duties. 2. That all work necessary to complete the improvement herein ordered be done in a manner satisfactory to this Comsion and be fully completed on or before September 30, 1959, and that on or before said date Reading Company report to this Commission the date of actual completion." There is sufficient substantial evidence in this record to support the order in its general intent and, in the total absence of error of law, we are bound by it. §1107 of the Law, 66 PS §1437.

The order however does no more than prescribe a result to be attained. Judged from a practical viewpoint it needs clarification as to the means of attainment. The intent of the order is clear and perhaps a plan which the Commission may require from the railroad might be helpful in furnishing the basis for a supplemental commission order, sufficiently specific in detail which will correct the dangerous conditions in the two yards. The method of accomplishment however is for the commission.

The record is remanded to the commission for clarification of its order, in accordance with this opinion.