Erie-Lackawanna Railroad Company, Appellant,
*v.* Pennsylvania Public Utility
Commission.

Argued March 19, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, JACOBS, and HOFFMAN, JJ. (MONTGOMERY and FLOOD, JJ., absent).

*Walter L. Hill, Jr.,* with him *Warren, Hill, Henkelman & McMenamin,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Thomas Park Shearer,* with him *Brandon, Shearer & Flaherty,* for intervening appellees.

OPINION BY WATKINS, J., April 15, 1965:

This is an appeal by the Erie-Lackawanna Railroad Company, from an order of the Pennsylvania Public Utility Commission directing the railroad to cease and desist from its practice of attaching its freight cars behind the caboose on train No. 99 on the route from Meadville, Pennsylvania, to Akron, Ohio, for the purpose of meeting schedules, and now practiced by the railroad on the average of twelve times a month, where the caboose is in use to house train crews, and further directing the railroad to limit such practice to emergency situations which do not include the mere meeting of schedules.

The complaint was filed against the railroad by the Cooperative Legislative Committee, Railroad Brotherhoods in the State of Pennsylvania, F. G. Gillespie and E. F. Luce. The individual complainants are officers of the legislative committee and employees of the railroad. It sets forth that the practice of so placing the caboose constitutes an unnecessary, unreasonable hazard to the operating personnel. The commission so found and sustained the complaint.

At the outset it should be noted that after years of railroad regulation by the commission they have developed a staff of technicians for their counsel and advice on matters that have to do with railroad operation in the safety field, so that they are able to take notice of what may be obvious hazards to the personnel and the public. This may explain the paucity of the evidence because even this Court from its little or no knowledge of railroad operations have taken notice of the fact that the caboose normally occupies a place at the rear of the freight train. The Division Superintendent of the railroad testified: "Well, frankly, we

like to see the caboose on the rear end of the train. It's where it belongs."

There was, however, sufficient evidence in the record to support the findings. Under the Public Utility Law, the Commission is given the power and jurisdiction to grant relief to railroad employees whose personal safety is jeopardized by conditions under which they work. *Pa. Railroad Co. v. Pa. P.U.C.*, 202 Pa. Superior Ct. 114, 195 A. 2d 162 (1963); *Reading Co. v. Pa. P.U.C.*, 188 Pa. Superior Ct. 146, 146 A. 2d 746 (1958). Since there is no question as to the Commission's jurisdiction, the only question before us is whether there is substantial evidence to support the findings and order of the Commission. Substantial evidence has been defined as meaning such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pittsburgh & Lake Erie R.R. Co. v. Pa. P.U.C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646 (1952).

There was sufficient evidence in the record to support the findings. It was testified that the two rear end marker lamps "classically constitute the emergency stop signal to a train approaching from the rear" and could not be displayed where a caboose was not the end car and then only a flag by day and an oil lantern at night comprise the stop signal; that "its harder to see a car with one rear light hanging in the center of the rear of it than it would be to see two markers on the caboose"; "it takes a flagman longer to get where he can be seen by a train following when there are cars behind the caboose"; that there was possibility of casualties at highway crossings at grade caused by misapprehensions on the part of automobile operators and other members of the public who customarily assume the caboose to be the last car of the train; there was apprehension on the part of employees as to the risk involved to the occupants of the caboose in the event

of casualties such as derailments and the fear of freight cars crashing from both sides into the caboose. This evidence sufficiently supported the findings of the Board that:

". . . freight cars are ordinarily not equipped with brackets and other appurtenances needed to display flags or equivalent day markers, nor is it possible to display from such cars the two red lights in a horizontal line which classically constitute the emergency stop signal to a train approaching from the rear. We are mindful of the respondent's desire to retain business by furnishing the best possible schedules to consignees, but the safety of respondent's employees is a higher consideration.

"There appears in this record an element of apprehension on the part of the employee complainants as to their personal safety when freight cars are in motion both ahead and behind their already confined quarters. An employee functioning under such conditions cannot work safely or efficiently."

We do not believe that this order to confine the placing of the caboose in the middle of the train rather than at the end to emergencies usurps the management function, except insofar as every rule or condition imposed by a regulatory agency on the conduct of the business regulated constitutes some restriction in the authority of management. In this case the diminution of control in the case of one particular train for the maintenance of adequate, efficient, safe and reasonable service falls well within art. IV, §401 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1171, and it is for the Commission to decide when the diminution is reasonably necessary in the interest of safety and the Commission's decision is not to be reversed unless arbitrary, capricious or unreasonable. *Latrobe Water Co. v. P.S.C.*, 115 Pa. Superior Ct. 66, 174 A. 615 (1934).

The contention that the language of the order is not sufficiently certain as to be enforceable under the requirement of due process of law is without merit. The order is clear and comprehensible. And finally, the railroad contends that the order of the commission is an unconstitutional burden on interstate commerce. The Commerce Clause is violated only when the state impedes "substantially the free flow of commerce from state to state, or to regulate those phases of the national commerce, which because of the need for national uniformity, demand that the regulation, if any, be prescribed by a single authority." *Southern Pacific Company v. Arizona,* 325 U.S. 761 ((1945), at page 767). And at pages 770, 771, "There has thus been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern. . . . Hence, the matters of ultimate determination here are the nature and extent of the burden which the state regulation of interstate trains, adopted as a safety measure, imposes on interstate commerce, and whether the relative weights of the state and national interests involved are such as to make inapplicable the rule, generally observed, that the free flow of interstate commerce and its freedom from local restraints in matters requiring uniformity of regulation are interests safeguarded by the commerce clause from State interference."

In that case the court found that a requirement as to the length of trains was a burden on interstate commerce. The dropping off of cars when they entered the state and the attachment of cars when they left would impose an exorbitant price on the railroad. The court found that the regulation of length of trains re-

quired uniformity throughout the country. Although this case was decided in favor of the railroad the case of *Terminal Railroad Association of St. Louis v. Brotherhood of Railroad Trainmen*, 318 U.S. 1 (1942), was cited with approval. In the *Terminal* case the Supreme Court decided that a state regulation requiring that a caboose be attached to the rear of every train running throughout the state did not constitute an undue burden on interstate commerce. The Court held the regulation was a valid exercise of the state's power to regulate health and safety.

In *Southern Pacific Company v. Railroad Commission of California*, 10 F. Supp. 918 (Dist. Ct., N.D., Cal. 1935), upon which the appellant relies heavily, the commission ordered an unusual innovation in requiring a caboose in the middle of the train. The Court held at page 922: "The conclusion is inescapable that compliance with the order will necessitate delay and interfere with the continuous movement of interstate freight trains, but we cannot say that such delay, per se, is a direct burden upon interstate commerce." The reason for the order in the California case was to eliminate "riding out" by brakemen in adverse weather conditions while still allowing brakemen to station themselves in the caboose instead of on top of the cars. The crux of the California decision was that the order was void for vagueness as it did not state under what weather conditions a caboose in the middle was necessary.

Order affirmed.