Bessemer and Lake Erie Railroad Company et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued March 14, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Blair S. McMillin,* and *Reed, Smith, Shaw & Mc-Clay,* for railroads, appellants.

*Thomas J. Smith,* of the New York Bar, for railroad, appellant.

*Richard N. Clattenburg,* for railroads, appellants.

*Harris J. Latta, Jr.,* for railroad, appellant.

*Robert O. Smith, Jr.,* of the Maryland Bar, and *John A. Shrader,* for railroad, appellant.

*John F. Reilly,* of the New York Bar, and *Paul Bedford,* for railroad, appellant.

*William P. Quinn,* for railroads, appellants.

*Grodon E. Neuenschwander,* for railroad, appellant.

*René J. Gunning,* of the Maryland Bar, for railroad, appellant.

*D. F. Donovan,* of the Ohio Bar, *W. L. Hill, Jr.,* and *Warren, Hill, Henkelman & McMenamin,* for railroad, appellant.

*William A. Goichman* and *Louis J. Carter,* Assistant Counsel, with them *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*T. P. Shearer,* with him *Brandon, Shearer & Flaherty,* for railroad brotherhoods, intervening appellee.

OPINION BY ERVIN, P. J., June 16, 1967:

These appeals by eleven railroads operating in Pennsylvania are from two orders of the Pennsylvania Public Utility Commission dated November 22, 1965 and December 19, 1966 ordering the railroads to promulgate appropriate operating rules to provide flagging protection "when a train stops [or is moving] under circumstances in which it may be overtaken by another train." In general, appellants contend that flagging protection is no longer necessary under automatic block and similar signal systems.

On July 22, 1964 the Co-Operative Legislative Committee, Railroad Brotherhoods, acting through three of its members, filed a complaint at C.18018 against

the Pittsburgh & Lake Erie R.R. Co., alleging the railroad had, in April of 1964, by a note to its Rule 99, eliminated flagging protection against following trains on the same track when operating under automatic block signal or traffic control system rules; that such procedure was unsafe, and asking the commission to order P. & L. E. to "reinstitute adequate and proper flag protection" in its system in Pennsylvania.

On October 26, 1964 the Brotherhoods Committee filed a petition (Docketed at P.7), served on all railroads operating in the state (including the P. & L. E. R.R., Appeal No. 141, March T., 1966), alleging that *some* railroads, by amendment to so-called Rule 99, eliminated flag protection in cases of trains operating under "locomotive cab signal system, automatic block signal system, or manual block signal system rules"; that proper safety measures required flagging under such circumstances. Accordingly the petition asked that the commission promulgate a regulation requiring flagging protection "when a train stops under circumstances in which it may be overtaken by another train, regardless of whether or not such train or trains are operating under locomotive cab, automatic block or manual block signal system rules." The railroad appellants filed separate answers, admitting in some instances that flagging had been eliminated as to trains operating under automatic signal system or traffic control system rules, and denying there was any necessity, in regard to safety, for the promulgation of rules as to flagging in automatic signal systems. The carriers, in fact, contended the use of flagging procedures in automatic block territory would be a step backward to outdated methods and a positive impediment to safety.

Thereafter the commission held separate hearings on Dockets C.18018 and P.7. Witnesses for the Brotherhoods gave testimony tending to show the necessity of

maintaining flagging rules. The carriers presented testimony to show that resort to flagging in automatic block signal and kindred signal systems, hindered, rather than enhanced, safety. The commission issued separate orders at C.18018 (in No. 142) and in P.7 (Nos. 133-144), both orders being dated November 22, 1965. The commission order at P.7, of November 22, 1965, states: "For many years it was the custom and practice of all railroads operating within Pennsylvania to require, generally by application of Rule 99, that stopped trains be protected against following movements by flagmen . . . and the carriers have considered this rear-end flag protection essential to safe operation." The commission explained that the automatic system involves a "fail-safe" principle, whereby a break in the electrical circuit will actuate a restrictive signal aspect. Automatic signal malfunctions may result in a "false-proceed" signal, or a "false-restrictive" failure, the latter involving a more restrictive signal aspect than is warranted by track conditions. I. C. C. records showed 58 false proceed failures in the United States on all railroads in 1964, while the Penna. R. R. reported 2,422 false restrictive failures on its system in one year. The commission found that the elimination of flag protection jeopardizes the safety of the public and railroad employes and that flag protection *augmenting* that furnished by signals, was essential, whether the signals were manual or automatic.

Accordingly the commission issued an order at Docket P.7 providing that all railroads operating in the state promulgate rules to require flag protection "for trains moving [or stopped] on main or secondary tracks, under circumstances in which such trains, may be overtaken by following trains . . . in manual block signal, automatic block signal, centralized traffic control or locomotive cab signal territories, *except* within the limits of interlocking plants, at stations where pas-

senger trains are making normal station stops, within the limits of a classification or storage yard and manual block territory protected by an absolute block." (Emphasis supplied) A note to the order stated that when trains are operating under automatic block signal system (and like systems) flagging requirements "will have been complied with when full protection is afforded against trains moving at restricted speed." The order at C.18018 directed P. & L. E. R.R. to operate its trains consistently with the above quoted order, designated as Rule 16 of the commission. The railroads appealed to the Superior Court from the orders of the commission dated November 22, 1965 at Dockets C.18018 and P.7, and all appeals were consolidated for argument. On March 15, 1966 this Court granted the petition of the commission for remission of the record. The commission then sent a letter to counsel of record in Dockets P.7 and C.18018, quoting the petition for remand and stating in general that the parties had difficulty in interpreting the commission's order of November 22, 1965; that there was confusion, as applied to certain railroads, in the application of such terms as "(1) interlocking plants and the limits thereof; (2) classification yards and the limits thereof; (3) storage yards and the limits thereof; . . . (6) main track; (7) secondary track; . . . (12) train; (13) normal station stops; (14) absolute block; . . . ." etc. Pursuant to this letter further joint hearings were held on Dockets P.7 and C.18018 and incorporated in a supplemental record. Testimony and exhibits were presented as to the meaning of various terms relating to flagging protection. The commission then entered its order of December 19, 1966 stating that advice received showed "adherence to Rule 16 [November 22, 1965 order] lacks uniformity and on some railroads is practically nonexistent" and that there was confusion as to the meaning of the terms "standard flagging

equipment," "trains moving on main or secondary tracks," and "within the limits of a classification or storage yard." The commission then stated that "the basic requirements of our order [of November 22, 1965] are in the general interest of the public and should not be materially disturbed. However, in order to eliminate the apparent confusion and misinterpretation of certain diction used in our existing order, flagging should be performed on main tracks, secondary tracks, or on any tracks used for the movement of trains, where a train, stopped or moving, may be overtaken by another train, whether within a yard proper; adjacent to the entrance to a yard; or in areas designated by a railroad as yard limit territory." The commission then quoted the November 22, 1965 order in P.7 and also at C.18018, and "modified" it to direct all railroads to promulgate rules "in conformity with the following: (a) When a train stops under circumstances in which it may be overtaken by another train, a member of the crew must provide flagging protection, that is, go back immediately with a red flag, torpedoes and fusees by day and with a red and/or white light, torpedoes and fusees by night, a sufficient distance to insure full protection, placing two torpedoes on the rail and when necessary, in addition, display lighted fusees.

"(b) When recalled and safety to the train will permit, he may return.

"(c) When conditions require, he will leave the torpedoes and a lighted fusee.

"(d) The front of the train must be protected in the same way, when necessary, by a member of the crew.

"(e) When a train is moving under circumstances in which it may be overtaken by another train, a member of the crew must take such action as may be necessary to insure full protection. By night (or by day, when the view is obscured) lighted fusees must be dropped off the moving train or displayed at proper intervals.

"(f) When day signals cannot be plainly seen, owing to weather or other conditions, night signals must also be used.

"(g) Conductors and enginemen are responsible for the protection of their trains.

"(h) When a pusher engine is assisting a train, coupled behind the cabin or caboose car, and the member of the crew who protects the rear-end of the train is riding in the cabin or caboose car, the requirements as to the use of fusees will be met by dropping them off between the cabin or caboose car and pusher engine on the track the train is using, and not between that track and an adjacent track."

The flagging rule spelled out in the commission's modified order of December 19, 1966 was in essence Rule 99 of many railroads, more particularly the Pennsylvania Railroad, as it existed prior to 1945. However, the modified order of December 19, 1966 did not contain any *express* exceptions to flagging protection in automatic and other signal territory, but the December order did state: "4. That in all respects *not inconsistent herewith,* our orders issued November 22, 1965, at P.7 and at C.18018, remain in full force and effect. . . ."

On January 17, 1967 the appellant railroads filed a petition for supersedeas and stay of the commission order of December 19, 1966, to which the commission filed an answer. On January 28, 1967 the commission filed a motion to quash the carriers' appeals, on the ground that its orders as to flagging protection were made in the exercise of its rule-making power, presented no "justiciable controversy" and were not appealable, under the decision in *Pa. R.R. Co. v. Pa. P.U.C.,* 396 Pa. 34, 152 A. 2d 422 (1959). We ordered the petition for supersedeas and motion to quash heard on the argument on the merits, all proceedings to stay meanwhile.

The present order of the commission was issued following (1) a complaint proceeding (C.18018) by the Brotherhoods against P. & L. E. R.R., and (2) a petition (P.7) by the Brotherhoods served upon all railroads operating in the state, to which the carriers filed answers. At one point the commission referred to this as a "consolidated complaint proceeding." It also takes the position, as regards the motion to quash, that this is entirely a rule making procedure, involving no actual controversy. Here a complaint and petition were filed, the carriers filed answers, extensive testimony was presented, and the commission had before it the facts showing the extent of flagging protection directed under the rules of the appellant carriers. In substance the proceedings were complaints against the carriers as to their nonobservance of allegedly necessary flagging regulations. The carriers were *ordered* and *directed* by the commission to put into effect a ruling of the commission as to flagging protection as a safety measure. Appellants should not be required to refuse to obey the commission's orders and await enforcement proceedings in order to test the legality of such orders. See §1001 of the Public Utility Law, 66 PS §1391. We feel that the present orders are appealable and *Penna. R.R. Co. v. Pa. P.U.C.*, 396 Pa. 34, 152 A. 2d 422, supra, is not controlling on this point.

Appellants claim the order was not lawful because not the result of any procedure authorized by the Public Utility Law, viz., neither a complaint (§1001, 66 PS §1391) nor an investigation by the commission (§1008, 66 PS §1398). The substance of the proceeding should control. The orders were within the powers of the commission as authorized by the Public Utility Law, cf. §§1001, 1008 and 1013 (66 PS §1403), supra.

"Under the Public Utility Law, the Commission is given the power and jurisdiction to grant relief to railroad employees whose personal safety is jeopardized by

conditions under which they work. Pa. Railroad Co. v. Pa. P.U.C., 202 Pa. Superior Ct. 114, 195 A. 2d 162 (1963) ; Reading Co. v. Pa. P.U.C., 188 Pa. Superior Ct. 146, 146 A. 2d 746 (1958)." *Erie-Lackawanna R.R. Co. v. Pa. P.U.C.*, 205 Pa. Superior Ct. 291, 294, 208 A. 2d 908 (1965). The requirements of due process in the form of notice and opportunity to be heard, were complied with. The commission's jurisdiction includes those powers necessary for the exercise of the authority granted in the Act: *Duquesne Light Co. v. Pa. P.U.C.*, 164 Pa. Superior Ct. 166, 63 A. 2d 466 (1949).

Appellants complain that the commission's order of December 19, 1966 exceeds the scope of remand, is a new and different order than that of November 22, 1965, entered without notice and due process, and is not supported by evidence. The December order is also attacked as too broad, allegedly requiring flagging for all trains on all tracks and as containing no exceptions covering station stops, interlocking plants, etc.; The petition for remand was understood by all parties to relate to the difficulty in interpreting the order regarding flagging. The petition stated: "It appears that portions of the order as issued are ambiguous and require clarification after the parties are given an opportunity to be heard." Appellants' answer attacked the original order of November 22, 1965 and denied that any clarification was necessary. On remand, hearings were held. Witnesses for the Brotherhoods and for the appellants Reading and Penna. R.R. testified as to the alleged ambiguities relating to flagging on "main and secondary tracks" and "yard limits." The December 19 order was within the scope of remand. The commission may, after notice and opportunity to be heard, modify or rescind previous orders (66 PS §1397). The two orders must be considered together and given a reasonable interpretation. The new order of December 19, 1966 provides that the orders of No-

vember 22, 1965 remain in full force and effect insofar as they are not inconsistent with the new order. The single issue in all these proceedings was clear, viz., under what circumstances was flagging protection necessary, under present day conditions, to the safety of the railroads and the public? As the commission points out, such exceptions to flagging requirements as "normal station stops of passenger trains" are clearly covered by the general rule as to "stops under circumstances in which [a train] may be overtaken by another train" since station stops are normally within "interlocking plants" and "absolute block territory." The order of December 19, 1966 is general and permits of exceptions in particular cases and varying conditions. In the light of the complete record disclosing the present and past practices of the railroads, there should be no serious difficulty in applying the December 19 order of the commission. In general, the order defines flagging protection and directs flagging to supplement automatic and other signal systems, subject to certain exceptions or "circumstances" where flagging is not necessary. It does not require flagging of all trains on all tracks, as appellants argue.

We do not exercise our independent judgment but only look to see whether the commission's findings are supported by substantial competent evidence: *Pittsburgh Rwys. Co. v. Pa. P.U.C.*, 198 Pa. Superior Ct. 415, 427, 182 A. 2d 80 (1962). Extensive testimony was presented by the Brotherhoods and the railroads as to the need for flagging protection, and as to conditions under which such protection was required. For instance, the I.C.C. records show New York Central R.R. had three false proceed failures in 1964 while the Penna. R.R. had six. The railroads produced expert testimony tending to show that automatic signal systems furnished full protection against rear-end collisions and that flagging was not necessary, but harmful, as the

engineman would rely on the flagman rather than automatic signals. The testimony as to the need for flagging protection under various conditions was conflicting and it was the function of the commission to resolve that conflict. There was evidence as to accidents allegedly due to false signals and lack of flagging protection. From the evidence the commission could properly find that "the elimination of flag protection against following trains, as has been effectuated by various carriers in Pennsylvania during recent months . . . has decreased the degree of safety available to the public and to railroad employees, . . . ." and could properly enter the orders requiring flagging under certain conditions.

Appellants contend that Congress has, under the Interstate Commerce Act (49 U.S.C. §26, 1958) preempted the field of protection against following trains in automatic block, manual block, locomotive cab signal, and centralized traffic control territory, so as to preclude state regulation as to flagging protection. Under the Transportation Act of 1920, as amended, 49 U.S.C. §26, the Interstate Commerce Commission is given the power and has prescribed detailed rules governing block and automatic train stop signal systems. See Sharfman, The Interstate Commerce Commission, Vol. 1, pp. 275-281 (1931). However, the I.C.C. rules presently in force contain no provision as to flagging. 49 C.F.R. 136.1-136.838 (Jan. 1966).

In the absence of legislation by Congress the states are not denied the power to secure safety in the physical operation of railroad trains through their territory: *Atlantic Coast Line R.R. Co. v. Georgia,* 234 U.S. 280, 34 S. Ct. 829, 831, 58 L. ed. 1312 (1914); *Smith v. Alabama,* 124 U.S. 465, 481, 8 S. Ct. 564, 31 L. ed. 508 (1888). Recently the C.C.A. 3d, in *Monongahela Connecting R.R. Co. v. Pa. P.U.C.,* 373 F. 2d 142, 148 (1967), affirmed this Court (206 Pa. Superior Ct. 17,

211 A. 2d 113) in conceding the state commission's power to require train line power brakes where cars transporting hot metal shipments were not engaged in "moving interstate traffic." McLaughlin, J., stated: "Where federal legislation admits of a gap the state may pass appropriate laws, to take care of needed protection, which do not conflict with their federal counterparts.", citing *Atlantic Coast Line v. Georgia,* supra, 234 U.S. 280, and quoting *Smith v. Alabama,* supra, 124 U.S. 465.

Under the Supreme Court cases there must be an actual conflict between the schemes of regulation so that both cannot stand in the same area: *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 443, 444, 80 S. Ct. 813, 4 L. ed. 2d 852 (1960) (city ordinance to abate smoke on vessels). The question whether Congress has so far exercised the exclusive jurisdiction that belongs to it as to exclude the state, must be answered by a judgment upon the particular case: *Head v. New Mexico Board of Examiners,* 374 U.S. 424, 83 S. Ct. 1759, 10 L. ed. 2d 983 (1963) (state statute regulating radio advertising). In *Brotherhood of Locomotive Eng. v. Chicago, R. I. & P. R. Co.,* 382 U.S. 423, 86 S. Ct. 594, 15 L. ed. 2d 501 (1966), the Court upheld a state statute providing for a minimum crew, stating (382 U.S. 429): "We first consider the question of pre-emption. Congress unquestionably has power under the Commerce Clause to regulate the number of employees who shall be used to man trains used in interstate commerce. In the absence of congressional legislation on that subject, however, the States have extensive power of their own to regulate in this field, particularly to protect the safety of railroad employees and the public." We conclude there is no Federal pre-emption so far as the commission's orders relating to flagging in this case are concerned.

Appellants argue that the flagging requirement of the commission's order creates a lack of uniformity, and an affirmative safety hazard, and imposes an unlawful burden on interstate commerce in violation of the Federal Constitution, art. I, §8. Admittedly, however, there is no financial burden on the carriers resulting from the flagging requirement, as the size of the crew remains the same regardless of the rule. The carriers' contention that reliance on flagmen lulls the engineer into a false sense of security and thus creates a safety hazard is opposed by the contrary opinion of other witnesses. Nor is the possible lack of uniformity as to flagging such as materially restricts the free flow of commerce across state lines. Cf. *Southern Pacific Co. v. Arizona*, 325 U.S. 761 (1945) (statute of state limiting the number of cars on trains held an undue burden on interstate commerce.) Rather the regulation as to flagging here ordered by the Public Utility Commission is within the state's police power: *Terminal R. Association v. Brotherhood of Railroad Trainmen*, 318 U.S. 1, 63 S. Ct. 420, 87 L. ed. 571 (1943-state statute requiring cabooses on freight trains). In *Erie-Lackawanna R. R. Co. v. Pa. P.U.C.*, supra, 205 Pa. Superior Ct. 291, 296, 208 A. 2d 908 (1965), we held an order of the commission directing the railroad to cease attaching freight cars behind the caboose was not an unconstitutional burden on interstate commerce, quoting *Southern Pacific Co. v. Arizona*, supra, 325 U.S. 761 (1945), at pages 770, 771: "There has thus been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern." See also *The Pennsylvania Railroad Co. et al. v. Dept. of Public Commissioners*, 49 N.J. 174,

229 A. 2d 505, an opinion of the Supreme Court of New Jersey, filed April 24, 1967, where the State Commissioners' requirement as to flagging in automatic and manual signal territory was sustained on evidentiary and constitutional grounds.

The orders of the commission are affirmed.