493 A.2d 666

MONESSEN SOUTHWESTERN RAILWAY
COMPANY, Appellee,

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION.

Appeal of LOCALS 1666 AND 1676 OF UNITED TRANSPOR-
TATION UNION AND LOCAL 3403 OF UNITED
STEELWORKERS OF AMERICA, Appellant.

MONESSEN SOUTHWESTERN RAILWAY
COMPANY, Appellee,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Appellant.

Supreme Court of Pennsylvania.

Argued March 8, 1985.

Decided June 4, 1985.

Charles F. Hoffman, Chief Counsel, Daniel P. Delaney, Dep. Chief Counsel, Louis G. Cocheres, Asst. Counsel, Harrisburg, for Pennsylvania Public Utility Com'n.

Herbert G. Zahn, Harrisburg, for Penndot.

David J. Armstrong, Stephen M. Houghton, Dickie, McCamey & Chilcote, Pittsburgh, for Monessen Southwestern Railway Co.

Thomas P. Shearer, Pittsburgh, for Locals 1666 and 1676 of the United Transportation Union and Local 3403 of the United Steel Workers of America.

Before NIX, C.J., and FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Appellee, Monessen Southwestern Railway Company, under charter powers granted in 1912, has been engaged in railroad operations as a common carrier under the regulation of Appellant, the Pennsylvania Public Utility Commission, to be hereafter referred to as the Commission. Appel-

lee applied to the Commission for a certificate of public convenience to cease operation as a regulated carrier. The application was filed pursuant to the Public Utility Code, Act of July 1, 1978, P.L. 598, No. 116, § 1102(a)(2), 66 Pa.C.S. § 1102(a)(2), which requires a public utility to obtain a certificate of public convenience in order to cease its operations or any part thereof. Appellee proposes to continue to operate, but not under the regulation of the Commission. Locals 1066 and 1076, United Transportation Union, and Local 3403, United Steelworkers of America, hereafter referred to as Unions, Appellants here, are the collective bargaining agents for employees of Appellee. They intervened in the proceedings, urging that Appellee be denied the requested relief. The matter was heard by an administrative law judge, who recommended denial of the certificate of public convenience. The Commission adopted the recommendation. The Commonwealth Court, 82 Pa. Cmwlth. 13, 474 A.2d 1203 (1984), reversed and remanded the case to the Commission for further proceedings under Section 1102(b) of the Code, 66 Pa.C.S. § 1102(b), which provides as follows:

—As a condition of its approval of any transaction covered by this section and involving those railroad carriers wholly located within this Commonwealth subject to the provisions of this part, the commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected and the commission shall include in its order of approval the terms and conditions it deems fair and equitable for the protection of the employees. The terms and conditions which the commission prescribes shall provide that, during the period of four years from the effective date of the order, the employees of the railroad carrier affected by the order shall not be in a worse position with respect to their employment except that any protection afforded an employee shall not be required to continue for a period longer than that during which the employee was in the employ of the railroad carrier prior to the effective date of the order. Notwithstanding any other provision of this section, the

commission may accept as fair and equitable an agreement pertaining to the protection of the interests of the employees entered into by the railroad carrier and the duly authorized representatives of the employees.

The evidence establishes the following: Appellee operates over approximately thirty-eight miles of track in the City of Monessen and Rostraver Township in Westmoreland County. It is a wholly owned subsidiary of the Wheeling-Pittsburgh Steel Corporation. The rail line runs from Wheeling-Pittsburgh's steel plant in Monessen to its nearby Gibsonton Yard storage facility, adjacent to the Pittsburgh and Lake Erie Railroad. The Duquesne Slag Products Company uses the facility for slag processing under contract with Wheeling-Pittsburgh. The line then runs under and interchanges with the Norfolk and Western Railroad. It crosses over Norfolk and Western and runs to the Patton Dump, where the Heckett Division of Harsco Corporation is engaged in contract slag processing for Wheeling-Pittsburgh. The only other company with a facility along the rail line is the Union Carbide Corporation. Union Carbide is adjacent to the Wheeling-Pittsburgh plant and supplies oxygen for the steel manufacturing process. The oxygen is delivered by pipeline. Appellee maintains a bridge running over Norfolk and Western, six bridges running over highways maintained by the Pennsylvania Department of Transportation, and one public grade crossing. Appellee's service consists entirely of hauling materials for Wheeling-Pittsburgh's slag processing operations. It does not serve any other customer and does not intend to do so. Appellee's application is not opposed by the City of Monessen, Rostraver Township, the Department of Transportation, or any of the adjacent companies or railroads.

■ The Commission argues that the Commonwealth Court's decision allowing Appellee to cease to operate under Commission regulation was contrary to law and not in accordance with the applicable standard of review. In the absence of an error of law or violation of constitutional rights, an order of the Commission must be upheld if it is

supported by sufficient evidence, *Norfolk and Western Railway Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980). We will not uphold an order which is not supported by the evidence. Moreover, it is for us to decide whether the Commission has properly applied the law to the facts.

The Public Utility Code regulates certain enterprises that it defines as public utilities. The definition of public utility is contained in Section 102 of the Code, 66 Pa.C.S. § 102. It includes, inter alia, "any person or corporation ... owning or operating ... equipment or facilities for ... transporting ... property as a common carrier." It does not include "any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself." The same section defines common carriers as "any or all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the public for the transportation of passengers or property or both, or any class of passengers or property ..." Section 1102 of the Code requires a public utility to obtain a certificate of public convenience from the Commission in order to render or cease rendering service. Appellee has been operating under the regulation of the Commission as a common carrier. Having so operated, it must obtain a certificate of public convenience from the Commission in order to cease its operations. If it obtains such certificate, it may cease its operations altogether. Alternatively, it may continue to operate independently of the Commission if its activities do not bring it under the purview of the Public Utility Code.

■ We find that the evidence and law do not support the Commission's denial of Appellee's application to cease operations as a common carrier. A common carrier as defined by the Code is an enterprise that renders service to the general public. Appellee does not meet that definition, as it serves only its parent corporation. This finding is supported by *Allaman v. Pennsylvania Public Utility Commission,* 149 Pa.Super. 353, 27 A.2d 516 (1942), decided under the previous Public Utility Law, Act of May 28, 1937,

P.L. 1053, No. 286. The court held there that persons who transported coal to their own customers but did not haul it for others were not common carriers. Appellee is not a common carrier and is entitled to the granting of its application.

■ The unions argue that Appellee's application should be denied to protect the interests of the workers. They cite case law holding that the Commission may regulate railroads so as to provide for the safety of their employees. It has been held to be proper for the Commission to order railroads to widen clearances between tracks, *Reading Co. v. Pennsylvania Public Utility Commission*, 188 Pa.Super. 146, 146 A.2d 746 (1958), to eliminate a pedestrian crossing over tracks because of employee hazard, *Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 202 Pa.Super. 114, 195 A.2d 162 (1963), to refrain from putting cabooses in the middle of trains when that was found to be hazardous to personnel, *Erie-Lackawanna Railroad Co. v. Pennsylvania Public Utility Commission*, 205 Pa.Super. 291, 208 A.2d 908 (1965), and to take protective measures relating to the movement of hot metal over a bridge at a steel mill, *Monongahela Connecting Railroad Co. v. Pennsylvania Public Utility Commission*, 206 Pa. Super. 17, 211 A.2d 113 (1965). We agree that the Commission has the power to regulate public utilities to protect workers. However, that does not defeat Appellee's right to cease to operate as a common carrier when it does not meet the statutory definition thereof. As the Commonwealth Court noted, the Commission may make provisions for the protection of workers' interests on cessation of the common carrier service. It may not use worker interests to disallow such cessation when it would otherwise be permissible.

The Order of the Commonwealth Court is affirmed and the case is remanded to the Public Utility Commission for proceedings under the labor protection provisions of Section 1102(b) of the Public Utility Code.

LARSEN, J., did not participate in the consideration or decision of this case.