Monessen Southwestern Railway Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 4, 1983, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE and BARRY.

*David J. Armstrong,* with him *Richard S. Dorfzaun* and *Stephen M. Houghton, Dickie, McCamey & Chilcote, P.C.,* of Counsel, *Joe W. Fleming, II,* for petitioner.

*Barry J. Grossman,* Assistant Counsel, with him *John B. Wilson,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Stephen Dittman,* with him *T. P. Shearer,* for intervenors.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 24, 1984:

Monessen Southwestern Railway Company (Monessen) petitions the Court for review of an order of the Pennsylvania Public Utility Commission at A-00102422 which denied Monessen's application for a certificate of public convenience under Section 1102 (a)(2) of the Public Utility Code (Code), 66 Pa. C. S. §1102(a)(2), authorizing it to cease operations as a common carrier.[1]  We reverse and remand.

Monessen operates a railroad over thirty-eight miles of track, twenty-three miles of which are owned by itself.  The balance is owned by Monessen's parent corporation, Wheeling-Pittsburgh Steel Corporation.[2] The railroad runs upon tracks within the Wheeling-

---

[1] Monessen's operations will not change if allowed to cease operations as a common carrier; rather, the effect of the issuance of the certificate will be that Monessen will no longer be under the jurisdiction of the Commission.

[2] Monessen is a wholly-owned subsidiary of Wheeling-Pittsburgh.

Pittsburgh steel plant, then south along the Monongohela River to a storage area for Wheeling-Pittsburgh. It then travels to an interchange with Norfolk and Western Railway, then doubles back to the slag processing plant of the Heckett Division of Harsco Corporation. A portion of Monessen's service to its parent consists of delivering slag provided in the steel plant to the slag dumps. Duquesne Slag and Heckett maintain facilities at the Wheeling-Pittsburgh dumps, pursuant to contracts entered into with Wheeling-Pittsburgh, to process the slag.

On September 4, 1980, Monessen filed an application for a certificate of public convenience with the Commission for authorization to abandon its common carrier rights. The application alleged that services rendered by Monessen are no longer necessary or proper for service, accommodation or convenience of the public.[3] A protest to the application was filed by the United Transportation Union and the United Steelworkers of America.[4] Hearings were held before an administrative law judge who, determining that it was necessary for Monessen to continue to operate as a common carrier, denied its application.

---

[3] The application further alleges that the only customer served by the railway was Wheeling-Pittsburgh; that the services rendered for Wheeling-Pittsburgh consist of intra-plant work; that Monessen has not rendered, nor has been requested to render, common carrier service to any other shipper in over ten years; that there is no reasonable prospect for any future use by the public; and that there is already adequate service provided by other railroads to shippers in the area.

[4] The protest alleged that Monessen failed to negotiate with its employees a fair and equitable agreement pertaining to the protection of the interests of its employees and that, pursuant to Section 1102(b) of the Code, 66 Pa. C. S. §1102(b), Monessen was desirous of avoiding the safety regulations administered by the Federal Railroad Administration and the Pennsylvania Public Utility Commission.

It is from the Commission's affirmance of this decision that Monessen appeals.

An order of the Commission denying a certificate of public convenience may not be disturbed except for an error of law, lack of evidence to support the order, or violation of constitutional rights. *John Gibbons, Inc. v. Pennsylvania Public Utility Commission*, 18 Pa. Commonwealth Ct. 114, 117, 334 A.2d 806, 807 (1975).

Section 1102(a) of the Code, 66 Pa. C. S. §1102 (a)(2), provides:

Enumeration of acts requiring certificate

(a) General rule.—Upon the application of any public utility and the approval of such application by the commission, . . . it shall be lawful:

. . . .

(2) For any public utility to abandon or surrender, in whole or in part, any service. . . .

Section 1103(a) of the Code, 66 Pa. C. S. §1103(a), provides in part:

Procedure to obtain certificates of public convenience

(a) General rule.—. . . A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, or safety of the public.

Thus, the Commission must determine whether the abandonment of the utility's service is necessary or proper for the service, accommodation, convenience or safety of the public. *New York Central Railroad v. Pennsylvania Public Utility Commission*, 188 Pa. Superior Ct. 647, 149 A.2d 562 (1959). In making this determination, the Commission may consider the

following factors : the use of the service by the public; the prospects as to future use by the public; the hardship to the public if service were discontinued; and the availability of alternative service. *Commuters' Committee v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 596, 604-05, 88 A.2d 420, 424 (1982).

After reviewing the record, we hold that the evidence does not support the Commission's finding that Monessen has not met its burden of proof. The Commission, in adopting the decision of the Administrative Law Judge, made findings of fact which support a granting of the certificate rather than a denial of it. For example, the Commission found that Monessen failed to demonstrate that it provided no common carrier service nor was it likely to provide the service. The evidence presented, however, demonstrates that Monessen exists solely for its parent, Wheeling-Pittsburgh. Of the other companies on the line, Heckett exists solely as an agent of Wheeling-Pittsburgh, and Duquesne Slag uses Monessen only for shipments consigned to Wheeling-Pittsburgh. Other outbound shipments are transported by truck. The only other company on the line is Union Carbide, which provides oxygen to be utilized in the steel-making process of the immediately adjacent Wheeling-Pittsburgh plant. The Commission found that Monessen provides no service to Union Carbide.[5] Furthermore, none of these companies objects to Monessen's application. This evidence clearly supports a finding that the public is not presently being served by the common carrier. As to the prospects of future service and available alternative service, two other railroads, the Pittsburgh and Lake Erie Railroad

[5] Monessen's track was last used in 1976, when Pittsburgh and Lake Erie Railroad Company delivered ten cars to the company.

Company and the Norfolk and Western Railway Company serve the Monessen and Rostraver areas.

The Commission also found, on the issue of crossing maintenance, that private contracts for maintenance into which Monessen entered were insufficient to protect the public interest. Monessen has entered into a contract for maintenance with Rostraver Township for the only two public grade crossings. Monessen has also entered into agreements with the appropriate parties for maintenance of its bridges over state highways and other railroad tracks. These enforceable agreements are clearly sufficient to protect the public interest. Abandonment pursuant to the Code would otherwise be impossible if the parties could not so contract.[6]

Under Section 1102(b) of the Code, 66 Pa. C. S. §1102(b), an arrangement to protect the interests of the employees is required as a condition to granting a certificate authorizing abandonment. This section provides:

> (b) Protection of railroad employees.—As a condition of its approval of any transaction covered by this section and involving those railroad carriers wholly located within this Commonwealth subject to the provisions of this part, the commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected and the commission shall include in its order of approval the terms and conditions it deems fair and equitable for the protection of the employees. The terms and conditions which the commission

---

[6] The Administrative Law Judge reflected his belief that abandonment would never be justified, in stating, "It is my view that the entire concept of removal of a railroad from the Commission's jurisdiction would, absent extraordinary circumstances, be a dereliction of the Commission's statutory responsibilities."

prescribes shall provide that, during the period of four years from the effective date of the order, the employees of the railroad carrier affected by the order shall not be in a worse position with respect to their employment except that any protection afforded an employee shall not be required to continue for a period longer than that during which the employee was in the employ of the railroad carrier prior to the effective date of the order. Notwithstanding any other provision of this section, the commission may accept as fair and equitable an agreement pertaining to the protection of the interests of the employees entered into by the railroad carrier and the duly authorized representative of the employees.

The Commission in adopting the Administrative Law Judge's decision, specifically made no finding on this issue.[7] Considering this provision and the absence of a finding thereon, it is necessary to remand this case to the Commission, so that it may consider the imposition of the labor protections permitted under the Code.

Reversed and remanded.

### ORDER

The order of the Pennsylvania Public Utility Commission at A-00102422 entered July 1, 1982, is reversed and remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.

Judge DOYLE dissents.

---

[7] We note that a collective bargaining agreement was negotiated with the employees' union on August 1, 1980, after the proposed abandonment was made known to the union. Whether this agreement satisfies the provisions of the Code is a determination we leave to the Commission.