633 A.2d 1264

MONESSEN SOUTHWESTERN RAILWAY CO., Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (ESTATE OF B. L. VAN DIVNER), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 24, 1993.

Decided Nov. 5, 1993.

James B. Hecht, for petitioner.

Robin S. Wertkin, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Monessen Southwestern Railway Company (MSW) appeals from the order of the Workmen's Compensation Appeal Board (WCAB) that affirmed, after remand, the grant of workmen's compensation benefits to William Van Divner.[1]  We reverse.

■ On October 18, 1981, Van Divner suffered a work-related injury to his left foot while working for MSW, a wholly-owned subsidiary of Wheeling–Pittsburgh Steel Corporation (WPSC).  Van Divner filed a complaint in the Court of Common Pleas of Allegheny County alleging liability on the part of MSW for his injuries pursuant to the provisions of the Federal Employers Liability Act, 45 U.S.C. §§ 51–60 (FELA).[2]

In MSW's answer to Van Divner's FELA complaint, MSW specifically pleaded:

13.  At the time of the events in question, [Van Divner] was employed by WPSC; he was not employed by MSW; and his claim is wholly outside the coverage of FELA. 45 U.S.C. §§ 51–60.

14.  The exclusive remedy for the claim alleged by [Van Divner] in his complaint is the remedy provided in the Pennsylvania Worker's [sic] Compensation Act [Act of June 2, 1915, P.L. 736, as amended,] 77 P.S. §§ 1–1031.

1.  Van Divner died on September 4, 1989 of causes not related to his occupational accident.  We will, however, continue to refer to the Respondent here, Van Divner's estate, as Van Divner.

2.  Employees are entitled to FELA benefits if the employer is a common carrier by railroad engaged in interstate commerce at the time of the accident.  FELA, when applicable, is an employee's exclusive remedy. *Trucco v. Erie Railroad Co.*, 353 Pa. 320, 45 A.2d 20 (1946).

15. At the time of the events in question, MSW was not a common carrier by railroad engaged in interstate commerce within the coverage of FELA.

(78a). Furthermore, WPSC's answer to Van Divner's FELA complaint specifically pleaded:

2. At all times material hereto, the plaintiff, Bill L. Van Divner was employed by this defendant, Wheeling–Pittsburgh Steel Corporation, and as a result thereof, the exclusive remedy for the claim alleged in Plaintiff's Complaint is provided for pursuant to the terms and conditions of the Pennsylvania Worker's [sic] Compensation Act, 77 P.S. §§ 1–1066.

(89a). In April 1985, Van Divner's FELA case was ripe for trial; however, the parties agreed in writing to settle Van Divner's case for $60,000. Nowhere in the settlement did MSW or WPSC admit any liability under FELA or any other act.[3] (93a–99a).

On April 16, 1985, due to adverse economic factors of overwhelming magnitude, MSW and WPSC went into Chapter 11 bankruptcy proceedings. Thus, payment of the Van Divner settlement, among countless other debts, was deferred.[4]

3. Concerning MSW's status as a common carrier, we must note that *before* Van Divner's injury and proceedings under FELA, MSW had applied to the Public Utility Commission (PUC) for a certificate of public convenience to cease operation as a common carrier pursuant to Section 1102(a)(2) of the Public Utility Code, 66 Pa.C.S. § 1102(a)(2). The PUC denied the application. After further proceedings, our Supreme Court on June 4, 1985, held that MSW was not a common carrier as defined by the Public Utility Code and was, therefore, entitled to decertification. *Monessen Southwestern Railway Co. v. Pennsylvania Public Utility Commission*, 82 Pa.Commonwealth Ct. 13, 474 A.2d 1203 (1984), *aff'd*, 507 Pa. 586, 493 A.2d 666 (1985).

4. After the bank dishonored MSW's settlement check, Van Divner sought priority for his claim pursuant to Section 1171(a) of the Bankruptcy Code, 11 U.S.C. § 1171(a), that provides personal injury claims arising from the operation of a debtor railroad are to be paid as an administrative expense from operating revenues. The bankruptcy court determined that although MSW had not yet been decertified by the PUC, that MSW was not a common carrier and therefore not a railroad as defined by 11 U.S.C. § 101(36). Thus, Van Divner could not receive priority for his claim. On appeal, the U.S. District Court for the Western District of Pennsylvania stayed the proceedings before the

On July 21, 1986, Van Divner filed a claim under the Pennsylvania Workmen's Compensation Act, 77 P.S. §§ 1–1031 (Act). A co-worker, Alex McCune, also suffered occupational injuries in 1981. McCune's case followed the identical procedural posture as Van Divner's case. After settling with MSW, McCune also filed a workmen's compensation claim. MSW defended against the workmen's compensation claims arguing that Van Divner's, as well as McCune's, petitions were time barred because of the three-year statute of limitations set forth in Section 315 of the Pennsylvania Workmen's Compensation Act (Act), 77 P.S. § 602. In due course, both Van Divner's and McCune's claims were heard by referee Barbara Luich. In both cases, Van Divner and McCune argued that they had been "lulled" to sleep on their workmen's compensation rights and that MSW was estopped from pleading the statute of limitations as a defense. Van Divner specifically claimed that MSW lulled him into not filing a claim under the Act by proceeding with the agreement to settle the FELA claim. Van Divner argued that the first notice to him that MSW was changing its position and denying its common carrier status so that FELA would not apply was in June 1985, when MSW filed documents with the bankruptcy court, and thus, only then, did MSW's filing trigger the three-year statute of limitation. However, the referee concluded that neither Van Divner nor McCune were "lulled" to sleep and that their claims were barred by Section 315 of the Act.

Both McCune and Van Divner appealed. On January 26, 1989, the WCAB affirmed the referee's decision in McCune, holding that McCune had known since 1980 that MSW was seeking to be decertified as a common carrier and that McCune should have filed a workmen's compensation claim, in the alternative to his FELA action, within the three-year period in order to protect and preserve his rights under the

bankruptcy court until the PUC made its decision. Van Divner's appeal to the Third Circuit was also unsuccessful. *See Wheeling–Pittsburgh Steel Corp. v. McCune,* 836 F.2d 153 (3rd Cir.1987). Almost five years later, in January 1991, these bankruptcy proceedings concluded successfully with creditors receiving 70.91 cents on the dollar.

Act.[5]

However, in Van Divner's appeal the WCAB travelled in precisely the opposite direction and reversed and remanded the referee's order. The essence of the WCAB's Van Divner decision contains two curious findings of fact: 1) that MSW sought decertification as a common carrier *after* it agreed to settle Van Divner's FELA claim; and 2) that MSW was now seeking to avoid *all* liability to Van Divner.

After remand Referee Lowman issued a decision in Van Divner's favor.[6] MSW appealed and in response to MSW's statute of limitations defense the WCAB stated that:

> it has previously considered this issue raised by [MSW] on three occasions and has denied [MSW's] appeal on all three occasions. Those occasions were prior to appeal, and prior to considerations for reconsideration. The board will not consider for a fourth time an issue which has already been decided.[7]

On appeal to this Court,[8] MSW argues that the WCAB erred in holding that Van Divner's petition was timely filed on the basis that MSW "lulled" him into inaction because *McCune* controls and, therefore, Van Divner is also not entitled to benefits under the Act. Van Divner argues, however, that *McCune* is factually different because there is no evidence that Van Divner knew of the decertification MSW was undergoing.

**5.** Following the WCAB's decision in the McCune case, McCune appealed to this Court which affirmed the WCAB's order. *See McCune v. Workmen's Compensation Appeal Board (Monessen Southwestern Railway Co.)*, 132 Pa.Commonwealth Ct. 66, 571 A.2d 1118 (1990).

**6.** The compensation immediately payable by MSW to Van Divner's estate under the referee's order amounts to approximately $105,000.00 not including interest, from the date of injury, October 18, 1991 to the date of Van Divner's death on September 4, 1989. Under the settlement agreement he was to receive $60,000 reduced to $47,699.97 by the bankruptcy proceeding.

**7.** The WCAB granted MSW's petition for supersedeas.

**8.** Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

The WCAB's opinion on remand to the referee stated the following:

We agree with [Van Divner] that [MSW's] actions in first acknowledging and then denying common carrier status have in effect denied [Van Divner] recompense for his injury. [MSW's] initial action in this matter clearly led [Van Divner] to believe that all necessary efforts were being made to compensate [Van Divner] for his loss. [MSW] negotiated a settlement to compensate [Van Divner] under FELA. [MSW's] subsequent actions in seeking decertification and thus avoiding its obligation to [Van Divner] rise to the level of deception and fraud which will not toll the statute of limitations under the Workmen's Compensation Act. *Palmer v. City of Pittsburgh,* [9 Pa.Commonwealth Ct. 526], 308 A.2d 179 (1973).

MSW argues that the WCAB abused its discretion because no substantial evidence exists to support the finding that MSW acted fraudulently to toll the statute of limitation under the Act. Further, MSW asserts that it never acknowledged common carrier status and that its settlement with Van Divner did not accept liability under FELA and, thus, there is no support for the WCAB's conclusion that MSW acted fraudulently. With all these arguments, we agree.

■ First, MSW's answer to Van Divner's FELA complaint specifically denied liability under FELA stating that all claims fell under the Workmen's Compensation Act. (78a). Second, while Van Divner did not testify to his knowledge, concerning MSW's attempt to be decertified by the PUC, he signed a settlement agreement where MSW did not accept any liability for the claims asserted against it. (97a). Finally, the WCAB's holding that MSW acted fraudulently should not have been an issue because fraud must be specifically pleaded. There are no allegations of fraud in Van Divner's workmen's compensation complaint, *see* (3a–4a), and the evidence presented does not demonstrate that MSW acted fraudulently as MSW denied liability from the onset of Van Divner's action under FELA.

Accordingly, we reverse.

## ORDER

AND NOW, this 5th day of November, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.

FRIEDMAN, Judge, concurring.

I concur in the result.

At the time Van Divner's injury occurred in 1981, Monessen was still certified as a common carrier. Therefore, a claim under FELA was the exclusive remedy for this injury and the WCAB had no jurisdiction. I do not believe that decertification of the employer subsequent to injury can retroactively change the status of the existing claim. Thus, the WCAB lacked jurisdiction over this case when it was filed in 1986 not because the statute of limitations had run, but because the WCAB never had jurisdiction in the first place.