**FOREST GLEN CONDOMINIUM AS-SOCIATION, by Rosemary Antol, Jack Davis, Shirley Hall, Mark Scappe, and Howard Whittle, Trustees AD Litem, Appellants**

v.

**FOREST GREEN COMMONS LIMITED PARTNERSHIP, Appellee.**

Superior Court of Pennsylvania.

Argued March 7, 2006.

Filed May 2, 2006.

Reargument Denied July 12, 2006.

Fred C. Jug, Jr., Pittsburgh, for appellants.

John C. Hansberry, Pittsburgh, for appellee.

BEFORE: HUDOCK, ORIE MELVIN and KELLY, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Forest Glen Condominium Association (Forest Glen), appeals from the order of the trial court granting summary judgment in favor of Appellee Forest Green Commons Limited Partnership (Forest Green Commons) in this declaratory judgment action. Forest Glen raises numerous assertions of trial court error. Upon review, we affirm.

¶ 2 The facts and procedural history may be summarized as follows. The parties are adjoining property owners of land situate in Moon Township, Allegheny County, Pennsylvania. Forest Glen is an association of the unit owners of condominiums erected on its property. Forest Green Commons is a partnership which leases the sixty townhouses on its property to individual tenants.

¶ 3 The parties' dispute is over the terms of an agreement executed in June of 1985, which presently allows residents of Forest Green Commons to enjoy certain uses of Forest Glen property, including recreational areas, in exchange for Forest Green Commons' payment of a proportionate share of costs and expenses for maintaining those areas. The document itself is styled "Declaration and Agreement of Easements" and was recorded in the office of the Allegheny County Recorder of Deeds on June 27, 1985 in Deed Book Vol. 7106, at pp. 559–80. This 1985 agreement was executed by Forest Greens Commons' predecessor in interest and by the association which subsequently filed a declaration

of condominiums and created the entity known as Forest Glen.[1] In 2002, residents of Forest Green Commons sought to use the recreational areas specified by that 1985 easement agreement. However, the parties were not able to settle on specific terms of financial responsibility for such use. As a result, Forest Glen filed this declaratory judgment action in February 2004 seeking to terminate the 1985 agreement.[2] The parties engaged in discovery after the pleadings were closed, and, in March 2005, both moved for summary judgment. By order of April 21, 2005, the trial court granted Forest Green Commons' motion and denied that filed by Forest Glen. This timely appeal followed.[3]

¶ 4 Forest Glen presents the following issues for our review.

1. Whether an easement agreement can be terminated pursuant to Section 3305 of the Uniform Condominium Act of Pennsylvania, which provides that certain contracts and leases that were entered into prior to the executive board taking office may then be terminated after the executive board takes office?

2. Whether the trial court erred in granting summary judgment on the basis that the subject agreement is the transfer of an ownership interest in land and therefore does not constitute a contract?

3. Whether the trial [court] erred in finding that the record does not reflect that the developer entered into the subject agreement for his benefit or the benefit of his affiliates and therefore is not within the purpose of the Act?

4. Whether the trial [court] erred in holding that if an easement is a contract, and not a conveyance of property rights, the plaintiff could likewise cancel the defendant's right of ingress, egress and utility access as these were matters irrelevant to this litigation?

Appellant's brief at vii.[4]

¶ 5 When reviewing the decision of the trial court in a declaratory judgment action we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. *Theodore C. Wills Company, Inc. v. School District of Boyertown,* 837 A.2d 1186, 1188 (Pa.Super.2003).

The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850, 857 (2005). A motion for summary judg-

---

1. This declaration was filed contemporaneously with the Declaration and Agreement of Easements.

2. Nevertheless, Forest Glen challenges only the provisions of the easement agreement pertaining to the recreational areas. *See* Appellant's brief at 8, 16.

3. Forest Glen filed its notice of appeal to the Commonwealth Court, which transferred the matter to this Court by order of July 5, 2005. *See* Certified Record (C.R.) at 50. We also note that the trial court filed a Rule 1925(a) opinion without requiring Forest Glen to file

a concise statement pursuant to Rule 1925(b). *Id.* at 51.

4. We observe that the Argument section of Forest Glen's brief does not correspond with the issues set forth in the statement of questions in violation of Pa.R.A.P. 2119(a), 42 Pa.C.S.A. We shall address the issues presented in the statement of questions. *See* Pa. R.A.P. 2116(a), 42 Pa.C.S.A. (explaining that, "ordinarily, no point will be considered which is not set forth in the statement of questions or suggested thereby.").

ment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. *Id.* An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Id.* n. 3.

*Swords v. Harleysville Ins. Cos.*, 584 Pa. 382, 388–89, 883 A.2d 562, 566–67 (2005).

¶ 6 We first observe that Forest Glen's first two issues are interrelated and together present a single novel question, namely, whether an easement may be considered a contract or lease for purposes of the Uniform Condominium Act (UCA), 68 Pa.C.S.A. §§ 3101 *et seq.* The trial court concluded that the 1985 agreement constituted a conveyance of property rights and not a lease or contract; consequently, the agreement was not subject to termination by the condominium association pursuant to Section 3305 of the UCA. Trial Court Opinion, 8/24/05, at 4–5. The trial court also opined that any involvement by the developer did not remove this case from the language of the UCA and that "all unit owners had actual notice of the easements before they purchased their units." *Id.* at 5–6. Our research has disclosed no decisions in Pennsylvania or any of our sister states[5] which address this precise issue,

and we, therefore, begin our analysis with the statute itself.

¶ 7 Section 3305 of the UCA makes provision for termination of certain agreements by an executive board of a condominium association, where such agreement was entered into before the board took office. Specifically, that section applies to

(1) any management contract, employment contract or lease of recreational or parking areas or facilities;

(2) any other contract or lease to which a declarant or an affiliate of a declarant is a party; or

(3) any contract or lease that is not bona fide or was unconscionable to the unit owners at the time entered into under the circumstances then prevailing[.]

68 Pa.C.S.A. § 3305. The provision further states that termination may be accomplished without penalty "at any time" after the executive board takes office. *Id.* Here, the "declarant" was the partnership association which created Forest Glen after execution of the agreement at issue in this case. As such, there is no dispute that the agreement was entered into before the Forest Glen executive board took office in 1991.

¶ 8 "When interpreting a statute, we must abide by the rules of statutory construction. It is a basic tenet of statutory interpretation that, 'when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'" *Springfield Township v. Mellon PSFS Bank*, —— Pa. ——, ——, 889 A.2d 1184, 1188 (2005)(quoting 1 Pa.C.S.A. § 1921(b)). "[W]e discern the legislative intent behind an enactment in accordance with the plain meaning of the words used." *American*

---

5. All states have adopted statutes relating to creation and governance of condominiums, and 15 (including Pennsylvania) have adopted some version of the Uniform Condominium

Act. *See* Comment preceding 68 Pa.C.S.A. § 3101; Uniform Condominium Act, 7 U.L.A. (Pt. II) §§ 1–101 *et seq.* (1980).

*Rock Mechanics, Inc. v. N. Abbonizio Contractors, Inc.*, 887 A.2d 322, 325 (2005). Additionally, "the sections of a statute must be read together and construed with reference to the entire statute." *Id.* (citation omitted). "Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention." *Swords, supra,* 584 Pa., at 390, 883 A.2d at 567. We may consult the comments to aid our interpretation of a statute. *Phillips v. Cricket Lighters,* 584 Pa. 179, 186, 883 A.2d 439, 444 (2005); 1 Pa.C.S.A. § 1939. "Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary." *Commonwealth v. Thomas,* 743 A.2d 460, 465 (Pa.Super.1999) (citation omitted), *appeal dismissed,* 563 Pa. 187, 758 A.2d 1177 (2000); *see also McGinness v. Unemployment Compensation Bd. of Review,* 177 Pa.Super. 104, 110 A.2d 918, 920–21 (1955); 1 Pa.C.S.A. § 1903(a). "It is only when 'the words of the statute are not explicit' on the [question presented] that resort to statutory construction is appropriate." *Kramer v. WCAB,* 584 Pa. 309, 321, 883 A.2d 518, 525 (2005).[6]

¶ 9 Forest Glen's main argument is that the easement agreement is a form of a contract, and thus the UCA expressly grants the executive board the authority to unilaterally terminate it. It is true, as Forest Glen observes, that courts of this Commonwealth have applied general con-

tract principles to aid interpretation of the language of particular easements. *See, e.g., Amerikohl Mining Co., Inc. v. Stilley,* 860 A.2d 547, 550 (Pa.Super.2004)(explaining that, "[to] ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument.") (citation omitted), *appeal denied,* 583 Pa. 667, 876 A.2d 392 (2005); *PARC Holdings, Inc. v. Killian,* 785 A.2d 106, 112 (Pa.Super.2001)(noting that, as in contracts, "the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed[.]"), *appeal denied,* 568 Pa. 702, 796 A.2d 984 (2002); *Baney v. Eoute,* 784 A.2d 132, 136 (Pa.Super.2001)(stating that, "[t]he terms of the instrument conveying the [easement] interest are interpreted by applying general principles of contract law."). *See also Assalita v. Chestnut Ridge Homeowners Association,* 866 A.2d 1214 (Pa.Cmwlth.2005)(same).

¶ 10 However, that is not to say that an easement is nothing but a contract and must, in all circumstances, be treated as such. "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RESTATEMENT (SECOND) CONTRACTS § 1 (1981). "A contract is formed when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with

---

**6.** In such an instance, the intention of the General Assembly "may be ascertained by considering, among other matters":

  (1) The occasion and necessity for the statute.

  (2) The circumstances under which it was enacted.

  (3) The mischief to be remedied.

  (4) The object to be attained.

  (5) The former law, if any, including other statutes upon the same or similar subjects.

  (6) The consequences of a particular interpretation.

  (7) The contemporaneous legislative history.

  (8) Legislative and administrative interpretations of such statute.

*Kramer, supra,* 584 Pa. at 321, 883 A.2d at 525 n. 5 (quoting 1 Pa.C.S.A. § 1921(c)).

sufficient clarity." *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa.Super.2003), *appeal denied*, 578 Pa. 685, 849 A.2d 242 (2004).

¶ 11 By contrast, "[a]n easement is an abstract property interest that is legally protected." *Id.* at 1220, 849 A.2d 242. The Restatement of Property defines an easement as follows.

An easement is an interest in land in the possession of another which

(a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;

(b) entitles him to protection as against third persons from interference in such use or enjoyment;

(c) is not subject to the will of the possessor of the land;

(d) is not a normal incident of the possession of any land possessed by the owner of the interest, and

(e) is capable of creation by conveyance.

RESTATEMENT OF PROPERTY § 450 (1944).

¶ 12 From these definitions it is clear that an easement is a property right with peculiar characteristics. Of crucial import here is the additional fact that terminating an easement is not a simple matter. The introductory note to this particular section of the Restatement explains that "[a]n easement may terminate either through the operation of the limitations of its creation or by extinguishment." For example, in Pennsylvania, mere nonuse of an easement does not extinguish an express easement created by a deed. Rather, courts have explained that an express easement may not be considered abandoned by the owner of the dominant tenement unless there is a showing of an intent to abandon, "coupled with either (1) ad-verse possession by the owner of the servient tenement; or (2) affirmative acts by the owner of the easement that renders the use of the easement impossible; or (3) obstruction of the easement by the owner of the easement that is inconsistent with its further enjoyment." *Ruffalo v. Walters*, 465 Pa. 236, 238–39, 348 A.2d 740, 741 (1975). *See also Hatcher v. Chesner*, 422 Pa. 138, 141, 221 A.2d 305, 307–08 (1966)(explaining that "where an easement is created by deed, Pennsylvania has required not only intent to abandon by the dominant tenement, but adverse possession by the servient tenement as well," and courts in this Commonwealth thus must view the actions and intentions of both the dominant and servient tenements.). Thus, case law suggests that the easement at issue here may not be simply terminated unilaterally by Forest Glen in the absence of some express authority.

¶ 13 With these principles in mind we may now turn to the language of the statutory provision at issue, permitting termination of contracts or leases made prior to formation of a condominium's executive board, in which Forest Glen finds such authority. Critically, the legislature specifically chose the terms "contract" and "lease" when providing a means for terminating certain business arrangements in Section 3305. At the same time, the legislature demonstrated its awareness that a condominium association also possessed certain powers to grant "easements, leases, licenses and concessions" as well as to exercise "any other powers necessary and proper for the governance and operation of the association." *See* 68 Pa.C.S.A. § 3302 (powers of unit owners' association). Clearly the legislature intended to treat easements, contracts, and leases differently within the UCA and chose those terms carefully. Review of the relevant statutory sections does not convince us that use of

these particular terms was left to chance or that all of these words could apply in various contexts where they were not included.

¶ 14 Giving plain meaning to the term "contract," we are unable to conclude the easement agreement here may be classified as such. Moreover, the easement agreement itself would not lend support to such an interpretation. The "Declaration and Agreement of Easements" expressly states that the real property would be burdened and benefited by the granting of the easements therein described. Forest Glen's predecessor specifically granted *easements* over its property including an easement to use and enjoy the recreation areas. The parties to the easement agreed that all of the real property involved here would be owned and conveyed subject to the easements granted by the document and would be "binding upon and inure to the benefit of the Declarants and their respective successors and assigns." Viewing this agreement within the context of the plain meaning of the statute, we cannot conclude that the easement granted here qualifies as a mere contract which may be terminated by the executive board.[7]

██ ¶ 15 Forest Glen also suggests that the easement in question is a lease and thereby subject to termination by the executive board under Section 3305. A lease, however, may be defined as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in question for exchange of consideration, usu. rent." BLACK'S LAW DICTIONARY 907 (8th ed.2004).

While the parties need not use the term "lease" in describing their agreement, a lease may be found where it is "the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period." *Morrisville Shopping Center, Inc. v. Sun Ray Drug Co.*, 381 Pa. 576, 582, 112 A.2d 183, 186 (1955). The agreement in question clearly conveyed an easement and not a lease. Forest Glen's predecessor did not voluntarily dispossess itself of the subject area nor was any prescribed period of time identified. The condition that Forest Green Commons share in maintenance costs certainly is not the same as providing for payment of rent. Moreover, the agreement itself references both easements and leases with a clear grasp that the two terms are not synonymous. Based on our review, we find that the agreement at issue here bears all the characteristics of an easement, not a lease arrangement. Accordingly, it does not fall within the provision of Section 3305 on this basis.

¶ 16 Based on the foregoing, we find no error of law or abuse of discretion in the trial court's conclusion that the easement was not a contract or lease under Section 3305. We also find no merit to Forest Glen's remaining issues. Its third contention of unconscionability is similarly dependent upon a finding that the easement here was a contract or lease. Lastly, Forest Glen's objection to the trial court's reference in its opinion to Forest Green Commons' rights of ingress and egress under the same easement agreement warrants no relief. Even if we were to accept Forest Glen's relevancy argument on this

---

7. The comment by the National Conference of Commissioners on Uniform State Laws further explains that this section of the UCA provides a mechanism for terminating long term contracts and leases with the developer himself or an affiliated entity, and "certain contracts and leases so critical to the operation of the condominium and to the unit owners' full enjoyment of their rights of ownership that they too should be voidable[.]" We find that the easement in question does not fall into these categories of agreements.

issue, it is clear the unchallenged portions of the easement agreement were not determinative of the applicability of the UCA in this case.

¶ 17 Accordingly, we agree with the trial court that Forest Green Commons was entitled to summary judgment and its order must be affirmed.

¶ 18 Order affirmed.