J-A35041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEYSTONE RIVER PROPERTIES, L.P., a Delaware Limited Partnership, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| MATTHEW CANESTRALE AND LORRAINE CANESTRALE, His Wife | : : : | No. 445 WDA 2015 |

Appeal from the Order entered February 11, 2015
in the Court of Common Pleas of Westmoreland County,
Civil Division, No. 845 of 2009

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 19, 2016**

Keystone River Properties, L.P., a Delaware Limited Partnership
("Keystone"), appeals from the Order granting the Motion for Summary
Judgment filed by Matthew Canestrale[1] and Lorraine Canestrale (collectively
"the Canestrales"), and dismissing Keystone's Complaint, with prejudice.
We affirm.

Monessen Southwestern Railroad Company ("Monessen") owned a
parcel of land in Rostraver Township, Westmoreland County, Pennsylvania.
On May 25, 1931, Monessen conveyed a strip of land running through their
parcel of land to the Pittsburgh and West Virginia Railway Company ("Pitt-
WV").  As part of the conveyance, which divided Monessen's land into

_____

[1] Matthew Canestrale died on February 15, 2015, just after the entry of the
Order granting the Canestrales' Motion for Summary Judgment.  **See** Brief
for Appellees at 6.  Despite his death, the caption of the litigation has not
been amended.  **See id**.

northern and southern portions, Monessen reserved an easement for use of a railroad bridge over the railroad on Pitt-WV's property. On September 4, 1980, Monessen filed an application with the Pennsylvania Public Utility Commission ("PUC") seeking authorization to abandon all of its railroad tracks located in Rostraver Township and to cease its operations. Monessen's application was ultimately granted, and it ceased all operations in 1986.

Monessen sold its interest in the land, both the northern and southern portions, to the Canestrales in 1990. On July 11, 1997, the Canestrales conveyed the southern portion of the land (7.2145 acres) to Keystone. The conveyance included the parcel of the property abutting the railroad bridge[2] connecting the two portions of property. Keystone leased the property to Three Rivers Marine & Rail Terminals ("Three Rivers"), which operates an intermodal transloading terminal on the property.[3] In 2008, the Canestrales removed the bridge and installed it on their property in La Belle, Pennsylvania. Keystone discovered that the bridge had been removed in January 2009.

---

[2] Following the creation of the easement, railroad tracks led up to and crossed the bridge. However, these tracks had been removed by the time Keystone had acquired its interest in the property.

[3] Three Rivers used barge access on the Monongahela River, truck access on I-70 and State Route 906, and railroad tracks on the Wheeling and Lake Erie Railroad. N.T., 9/4/13, at 12-13, 32. The tracks utilized by Three Rivers did not include the railroad tracks that had previously crossed the bridge. *Id*. at 32.

On January 30, 2009, Keystone filed a Complaint against the Canestrales. Keystone alleged, *inter alia*, that it had an easement to use the bridge over the Pitt-WV property based upon a Monessen deed that retained the easement. Keystone claimed that the Canestrales violated its property rights by removing the bridge. The Canestrales filed an Answer and New Matter, and Keystone filed a Reply to New Matter. Following discovery, the Canestrales filed a Motion for Summary Judgment. The trial court granted the Canestrales' Motion and dismissed Keystone's Complaint, with prejudice. Keystone filed a timely Notice of Appeal.

On appeal, Keystone raises the following questions for our review:

A. Whether the trial court erred by misapplying the standard of review and by making factual determinations when genuine issues of material fact existed as to whether the right[-]of[-]way had been abandoned[?]

B. Whether the trial court erred in concluding that Summary Judgment was warranted as to Keystone's trespass claim because Keystone had not allegedly pled that the Canestrales trespassed upon Keystone's land[,] when Keystone had indeed pled the Canestrales had trespassed on its land[?]

C. Whether the trial court erred in concluding that Keystone's pleaded trespass action damages are not damages that could result from a trespass to Keystone's land[?]

D. Whether the trial court erred in relying on, and interpreting, facts cited in court opinions concerning [Monessen's] filings with the [PUC] to assist the court in establishing that no genuine issues of material fact existed as to [Monessen's] intention to abandon its right[-]of[-]way[?]

Brief for Appellant at 9.

Our standard of review is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Thompson v. Ginkel*, 95 A.3d 900, 904 (Pa. Super. 2014) (citation and brackets omitted).

In its first claim, Keystone contends that the trial court erred in granting the Canestrales' Motion for Summary Judgment because it misapplied the standard of review for entry of summary judgment. Brief for Appellant at 17, 24. Keystone argues that the trial court improperly determined that the railroad bridge was abandoned based upon inferences improperly made in favor of the Canestrales. *Id*. at 19-24. Keystone asserts that there were genuine issues of fact as to whether Monessen intended to abandon the railroad bridge. *Id*. at 19. Keystone claims that in determining that Monessen intended to abandon the right of way, the trial court improperly relied on proceedings before the PUC in that these

- 4 -

proceedings did not involve Monessen's intent to abandon the right-of-way. *Id*. at 20-22; *see also id*. at 19 (stating that PUC proceedings are not dispositive as to whether abandonment has occurred). Keystone also asserts that a genuine issue of fact remains as to whether Monessen's removal of railroad tracks on the bridge constituted an abandonment of the entire right-of-way. *Id*. at 19, 22-24. Keystone argues that the removal of the railroad tracks did not render the bridge unusable, and that the removal of the tracks could have been done for reasons other than abandonment. *Id*. at 22-24.

An easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 676 n.7 (Pa. 2005) (citation omitted). "When reviewing an express easement, the language of the agreement, unless ambiguous, controls." *Baney v. Eoute*, 784 A.2d 132, 136 (Pa. Super. 2001). "To determine the nature of an express easement, we must ascertain the intention of the parties from the language of the instrument. *Amerikohl Mining Co. v. Peoples Nat. Gas Co.*, 860 A.2d 547, 550 (Pa. Super. 2004). "Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made." *Id*. (citation omitted). "[I]f the

location, size or purpose of an easement is specified in the grant, then the use of an easement is limited to the specifications." **PARC Holdings, Inc. v. Killian**, 785 A.2d 106, 111 (Pa. Super. 2001); **see also Garan v. Bender**, 55 A.2d 353, 354 (Pa. 1947) (stating that "an owner may make changes not affecting the character of the servient estate so long as the use of the easement is confined strictly to the purposes for which it was created.").

"[A]n easement may terminate either through the operation of the limitations of its creation or by extinguishment." **Forest Glen Condo. Ass'n v. Forest Green Common Ltd. P'ship**, 900 A.2d 859, 864 (Pa. Super. 2006) (citation omitted). An easement may be extinguished where the dominant tenant abandons the easement. **Id**. With regard to the abandonment of a railroad easement, our Court noted the following:

> In order to establish the abandonment of a right-of-way, the evidence must show that the easement holder intended to give up its right to use the easement permanently. Such conduct must consist of some affirmative act on his part which renders use of the easement impossible, or of some physical obstruction of it by him in a manner that is inconsistent with its further enjoyment. Mere nonuse by the railroad does not amount to abandonment.
>
> In determining the intent of the parties, the intermediate courts have considered a myriad of factors. For example, ... a mere failure to maintain and repair existing tracks did not amount to an intent to abandon. [Further, it has been] held that evidence that the railroad company entered into salvage agreements and quitclaimed its interest in the subject property should be submitted for the factfinder to resolve the railroad's intent to abandon. Courts in this Commonwealth have also indicated that the filing of a certificate of abandonment with the ICC or PUC

demonstrated intent to abandon, but cautioned that in order to justify a finding of abandonment, the filing of the certificate must be coupled with external acts in furtherance of abandonment.

In sum, many different factors can be considered when making a determination of abandonment. Moreover, no single factor alone is sufficient to establish the intent to abandon. Abandonment must be determined based upon all of the circumstances surrounding the alleged abandonment.

*Moody v. Allegheny Valley Land Trust*, 930 A.2d 505, 514-15 (Pa. Super. 2007) (citations, quotation marks, and emphasis omitted), *aff'd*, 976 A.2d 484 (Pa. 2009). "[Q]uestions of abandonment are heavily fact-driven decisions. The reason that these decisions are heavily fact-driven is that intent to abandon must be established from the evidence, and that numerous possible factors evidencing intent must be considered." *Moody*, 930 A.2d at 514 (citation, quotation marks, and emphasis omitted).

On May 25, 1931, when Monessen conveyed the strip of land to Pitt-WV, thereby dividing its property, it reserved an easement for a railroad bridge over the Pitt-WV property. The deed stated the following:

Excepting and reserving unto [Monessen], its successors and assigns, however, the permanent right and easement for the construction, maintenance, repair, renewal and operation of its railroad tracks and facilities supported by an adequate railroad bridge as now constructed over and across the property hereinabove granted, together with the right to support said crossing or bridge by the four pedestals and columns now located and constructed on the above described property.

Deed, 5/25/31, at 5 (unnumbered).

On September 4, 1980, Monessen filed an application with the PUC for authorization to abandon its railroad tracks located in Rostraver Township,

and cease operation as a common carrier. ***Monessen Sw. Ry. Co. v. Pennsylvania Pub. Util. Comm'n***, 474 A.2d 1203, 1205 (Pa. Cmwlth. 1984), ***aff'd***, 493 A.2d 666 (Pa. 1985). The PUC denied the application; however, the Commonwealth Court reversed the PUC's denial and granted Monessen's application. ***Monessen Sw. Ry. Co.***, 474 A.2d at 1206. In 1990, Monessen sold its interest in the property, both the northern and southern portions, and the railroad bridge connecting the properties, to the Canestrales.

On July 11, 1997, the Canestrales sold the southern portion of the property, including the parcel accessing the railroad bridge, to Keystone. In a deposition, Keystone's corporate designee, Scott Turer ("Turer"), stated that any railroad tracks that led up to and crossed the bridge had been removed by the time Keystone purchased the property. N.T., 9/4/13, at 33-34; ***see also id***. at 26-27 (wherein Turer stated that Keystone did not know the last time the bridge had been used by a railroad car or train engine); ***id***. at 32 (wherein Turer admitted that Three Rivers used a separate railroad on Keystone's property). Turer acknowledged that Keystone never used the bridge, and did not have permission to enter the property on the northern side of the bridge. ***Id***. at 20, 49. Turer further indicated that Keystone never inspected the bridge to determine whether it required maintenance or whether railroad tracks could be placed on it. ***Id***. at 20-23. Keystone discovered the removal of the bridge in January 2009. ***Id***. at 18.

Here, Monessen's actions of filing an application with the PUC to remove the railroad tracks in Rostraver Township and cessation of its common carrier operations,[4] and its removal of the railroad tracks on the bridge and on either side of the bridge, supported a finding that demonstrated that it had abandoned the railroad bridge. *See Buffalo Twp. v. Jones*, 813 A.2d 659, 664 (Pa. 2002) (stating that "[i]n evaluating whether the user abandoned the property, the court must consider whether there was an intention to abandon the property interest, together with external acts by which such intention is carried into effect."); *Moody*, 930 A.2d at 515 (stating that "the filing of a certificate of abandonment with the … PUC demonstrated intent to abandon, but cautioned that in order to justify a finding of abandonment, the filing of the certificate must be coupled with external acts in furtherance of abandonment.") (citation and emphasis omitted); *see also Thompson v. Maryland and Pennsylvania R.R. Pres. Soc'y*, 612 A.2d 450, 453 (Pa. Super. 1992) (noting that the removal of railroad tracks evidenced an external act to abandon the easement). Indeed, the fact that no trains have run over the railroad bridge for numerous years further confirms abandonment. Moreover, Monessen did not reserve the right to re-enter the railroad bridge or resume service;

---

[4] Keystone argues that the PUC proceedings were limited to Monessen's cessation of its operations as a common carrier, not to an abandonment of the railroad or right of way. Brief for Appellant at 20. Keystone's argument is contravened by Monessen's Application, which sought to abandon *all* railway tracks in Rostraver Township **and** cease operation as a common carrier.

- 9 -

rather, Monessen divested its ownership of the two parcels of land to the Canestrales. *Cf. Buffalo Twp.*, 813 A.2d at 665-66 (noting that Conrail expressly retained the right to re-enter the "land for future railroad use in the deed," which demonstrated an intent to retain an interest in the easement).[5]

Contrary to Keystone's argument that the easement could be utilized without the railroad, the record reflects that the easement was specifically limited to use as a bridge for a railroad, and does not include any other uses for the bridge. *See* Deed, 5/25/31, at 5 (unnumbered) (stating that "[e]xcepting and reserving unto [Monessen], its successors and assigns, however, the permanent right and easement for the construction, maintenance, repair, renewal and operation of its railroad tracks and facilities supported by an adequate railroad bridge …."); *see also PARC Holdings, Inc.*, 785 A.2d at 111 (stating that if the purpose of the easement is specified in the granting instrument, the easement is limited to those uses). Thus, because the easement was given for a specific purpose, *i.e.*, a railroad bridge, it terminated as soon as the use for that purpose was

---

[5] We note that there is "strong federal and Pennsylvania legislative policy to preserve railroad rights-of-way by allowing interim recreational use, most notably as articulated in the National Trails System Act…." *Moody*, 930 A.2d at 512; *see also* 16 U.S.C.A. § 1241–51. This preservation of the right of way, known as "railbanking," allowed for the protection of rail corridors and the future reactivation of rail service. *Buffalo Twp.*, 813 A.2d at 666-67. The interim use of the easement under these circumstances would constitute a "discontinuance" and not an abandonment. *Id*. at 666. Here, there was no evidence, and relevantly, no material issue of fact, that the railroad bridge had been railbanked for an interim use.

abandoned. Based upon the foregoing, we conclude that the trial court did not err as a matter of law or make improper factual determinations when it held that (1) Monessen had abandoned its railroad bridge; (2) as a result of Monessen's abandonment, the railroad bridge right-of-way was extinguished; (3) the Canestrales did not transfer a valid right-of-way to Keystone; and (4) Keystone had no enforceable rights with regard to the abandoned easement.

We will address Keystone's next two claims together. In its second claim, Keystone contends that the trial court erred in granting summary judgment on its trespass claim based on the court's finding that Keystone had not pled that the Canestrales had trespassed on Keystone's land. Brief for Appellant at 24; **see also id**. at 24-25 (wherein Keystone states that the trial court found that Keystone's Complaint alleges only that the Canestrales had trespassed on the railroad bridge). Keystone argues that in light of the trial court's error, the case must be reversed and remanded for further proceedings on its trespass claim. **Id**. at 25.

In its third claim, Keystone contends that the trial court erred in finding that its averments for damages based on the trespass action were not viable. **Id**. at 25, 29. Keystone argues that the Canestrales' liability arose when they entered Keystone's land without invitation or consent. **Id**. at 26-27. Keystone asserts that the damages for this action include restoring the property and bridge to its former condition. **Id**. at 27-28; **see**

- 11 -

*also id*. at 28 (wherein Keystone claims that "[a]lthough some of [the] allegations of damages address the cost to replace the [b]ridge, these are damages that are recoverable because of the trespass to the land itself.").

"It is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so." *Kennedy v. Consol Energy Inc.*, 116 A.3d 626, 636 (Pa. Super. 2015); *see also Florig v. Estate of O'Hara*, 912 A.2d 318, 327 n.13 (Pa. Super. 2006) (stating that "[t]o maintain trespass, there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property; and he must have been deprived of it by the tortious act of another.") (citation omitted). In determining the proper measure of damages for an injury to land, we note the following:

> Assuming the land is reparable, the measure of damage is the lesser of: (1) the cost to repair, or (2) the market value of the damaged property (before it suffered the damage, of course). If the land is not reparable, the measure of damage is the decline in market value as a result of the harm.

*Slappo v. J's Dev. Assocs., Inc.*, 791 A.2d 409, 415 (Pa. Super. 2002) (citations omitted).

Relevantly, Keystone's Complaint states the following:

19. Unbeknownst to [Keystone], sometime in the year 2008, the [Canestrales] and their duly authorized agents, servants, workmen and employees or their duly authorized contractors purposefully, intentionally and tort[i]ously trespassed upon [Keystone's] lands and razed the railroad bridge over the [Pitt-

WV] tracks and appropriated unto themselves the structural components of the railroad bridge.

Complaint, 1/30/09, at 4. The remaining averments in Keystone's Complaint relate exclusively to the removal of the railroad bridge. *See, e.g., id*. at 1-5. Keystone alleges that "[t]he razing of the bridge was without the consent of [Keystone], was clearly in violation of the appurtenant rights vested in [Keystone] by virtue of the … deed and its appurtenances and constituted an intentional and tort[i]ous interference with the rights of [Keystone]." *Id*. at 4. Keystone further alleges that it never abandoned its right to use the railroad bridge; that the Canestrales' action of removing the bridge deprived it of ownership of its land; and that Keystone's property rights were damaged due to the removal of the railroad bridge. *Id*. at 4, 5. Keystone averred that due to the removal of the bridge, it suffered damages including the cost of construction of a replacement bridge, the loss of opportunity with regard to the industrial uses on the Canestrales' property, the diminution of its property value, and delay in the use of the bridge. *Id*. at 4-5.

Here, Keystone's single and generic reference to trespass on its "lands," without further explanation, was insufficient to overcome the grant of summary judgment as to its claim of a trespass on the tract of land that was connected to the bridge. Indeed, the entirety of the Complaint relates to the removal of the railroad bridge, and Keystone does not present any evidence that the Canestrales actually entered their property to remove the

railroad bridge. *See* Trial Court Opinion, 2/11/15, at 6; *Thompson*, 95 A.3d at 904 (stating that "[f]ailure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.") (brackets omitted). Furthermore, Keystone has neglected to present any evidence of actual harm caused by the Canestrales with regard to its property. *See Thompson*, 95 A.3d at 904. Instead, in its Complaint, Keystone's damages relate exclusively to the removal and loss of the railroad bridge, rather than any damages due to the alleged trespass on its tract of land. *See* Trial Court Opinion, 2/11/15, at 6. Moreover, as noted above, Keystone is not entitled to relief on its trespass action related to the railroad bridge due to Monessen's abandonment of the railroad bridge. Because the railroad bridge was abandoned, and because Keystone has failed to allege an actionable trespass by the Canestrales as to its property, we conclude that Keystone's second and third claims are without merit.

In its final claim, Keystone contends that the trial court erred in relying upon facts cited in opinions related to Monessen's PUC filings to determine abandonment of the railroad bridge. Brief for Appellant at 29, 30. Keystone argues that Pennsylvania law does not permit a trial court to rely on opinions in unrelated cases when ruling on a case. *Id*. at 29. Keystone asserts that

the trial court's action allowed the Canestrales to avoid presenting any evidence regarding abandonment. *Id*. at 31.

As noted above, in determining whether a railroad bridge has been abandoned, courts may consider whether a certificate of abandonment has been filed with the PUC. *See Buffalo Twp.*, 813 A.2d at 665; *Moody*, 930 A.2d at 515. In this case, the trial court considered the existence and outcome of the PUC proceedings, but not the "facts as stated within." Trial Court Opinion, 2/11/15, at 4. Keystone has not demonstrated that the trial court made any impermissible findings and thus, its final claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016